UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Tammy Williams,                                              Case No. 3:23-cv-1531

        Plaintiff,

    v.                                                       MEMORANDUM OPINION
                                                                                                AND ORDER

KIN, Inc., *et al.*,

        Defendants.


## I.   INTRODUCTION

Defendant KIN, Inc. has filed a motion for summary judgment. (Doc. No. 15). Plaintiff Tammy Williams filed a brief in opposition. (Doc. No. 16). KIN, Inc. filed a brief in reply. (Doc. No. 17). For the reasons that follow, I grant KIN, Inc.'s motion.

## II.   BACKGROUND

Williams seeks to recover for the serious injuries she sustained when she fell in the parking lot of a Kohl's department store in Perrysburg, Ohio. (*See* Doc. No. 15-1 at 2). At around 8:45 p.m. on July 19, 2021, Williams arrived at Kohl's to make a return. (*Id.* at 2-3). At this hour, in the summer, it was "dusk . . . [i]t wasn't dark dark, but it wasn't bright out either." (*Id.* at 4). The weather was clear. (*Id.*).

Although Williams usually went "through the women's side," she parked near the entrance to the "men's side" of the store because it was closing soon and she had no other shopping to do. (*Id.* at 3). Bag in hand, Williams exited her car and began to walk through a crosswalk towards the

Kohl's entrance, watching for oncoming traffic. (*Id.* at 3; Doc. No. 14-1 at 8). Then, "something caught [her] foot and [she] fell and landed on [her] . . . right shoulder." (Doc. No. 15-1 at 3). The fall broke Williams's proximal right humerus, requiring an invasive surgery to install "a plate and screws." (Doc. No. 14-1 at 6). Since the fall, Williams has experienced terrible pain and significant swelling, limiting her range of motion and making it difficult to engage in basic tasks like driving and writing. (*Id.* at 6-7).

Williams acknowledged she was not distracted when she fell, and nothing blocked her view of the ground at that time. (Doc. No. 15-1 at 3). While on the ground, Williams observed a "car that was coming down to park" that "had [its] lights on." (*Id.* at 4). The crosswalk in question allows pedestrians to cross the paved throughway separating the cars in the parking lot from the entrance to the store. The crosswalk consists of two thick yellow lines running across the throughway, parallel to each other and several feet apart, with diagonal yellow lines running in between, creating a series of parallelograms. (*See* Doc. No. 15-1 at 5). A long, darker-colored crack in the pavement runs horizontally through the crosswalk. (*See id.*). A series of smaller cracks and warps in the pavement radiate from this larger crack, concentrating in a small area roughly halfway between the parking spots and the sidewalk in front of the store. (*See id.* at 3, 5-7).

Williams testified she tripped and fell on a "divot" within this concentrated area of cracks that was "approximately like one, two, maybe even three inches" deep. (*Id.* at 3, 4). Williams did not take measurements of the divot or the cracked-and-warped area, and no such measurements were submitted into the record for consideration at summary judgment. (*See id.* at 4). Williams testified she "didn't see" the divot when she "was walking up because it's not really noticeable." (Doc. No. 15-1 at 3). Williams returned to the Kohl's parking lot after the accident to get a second look at the divot, and she "sat at different angles to kind of see it." (*Id.*). It was raining that day, and Williams photographed the divot "filled with . . . rainwater." (*Id.*).

2

On July 6, 2023, Williams sued KIN, Inc. and two corporate John Doe defendants in the Wood County, Ohio Court of Common Pleas. (Doc. No. 1 at 1); *see Williams v. Kohls Inc. of Wisconsin*, No. 2023CV0362, Complaint (Wood Cnty. C.P. July 6, 2023). KIN, Inc. received service of process on July 10, 2023, and it removed the case to this court on August 7, 2023. (Doc. No. 1 at 1). The John Doe defendants remain unidentified.

### III.  STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). But "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter.'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).

Ultimately, I must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV.   ANALYSIS

Williams brings two claims against KIN, Inc.: one for negligence, and one for nuisance. (Doc. No. 1-1 at 4-6). These are distinct causes of action under Ohio law. *See, e.g.*, *Shaw v. Hilton Garden Inn*, Case No. 1:17–cv–685, 2017 WL 4124973, at *4, *7 (N.D. Ohio Sept. 18, 2017).

When applying state law, a federal court must "anticipate how the relevant state's highest court would rule in the case" by looking to "controlling decisions of that court." *Vance v. Amazon.com*, 852 F.3d 601, 610 (6th Cir. 2017) (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)). If there are no controlling highest court decisions, a court must "make the best prediction of what the state court would do if confronted with the question" by looking to state

4

appellate court decisions. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008) (citing *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004)).

"To prevail in a negligence action, a plaintiff must demonstrate that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122-23 (Ohio 2009) (citations omitted). "[I]n the premises-liability context, the applicable duty is determined by the relationship between the landowner and the plaintiff." (*Id.* at 123) (citing *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996)). Here, the parties agree Williams was a "business invitee," and that KIN, Inc. owed her a duty "'to exercise ordinary care . . . by maintaining the premises in a safe condition.'" *Lang*, 909 N.E.2d at 123 (quoting *Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986)); (*see* Doc. No. 15 at 9; Doc. No. 16 at 7). The parties disagree over the scope of that duty.

KIN, Inc. argues that the portion of the pavement over which Williams tripped was an "open and obvious hazard" which "relieved" it of its "duty of care." (Doc. No. 15 at 9) (citing *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1099 (2003)). Alternatively, it argues that the uneven pavement was a "trivial" or "minor" defect for which a private landowner cannot be liable. (*Id.* at 13-14) (citing *Meyer v. Dayton*, 74 N.E.3d 921, 926 (Ohio Ct. App. 2016)). Williams argues the portion of the pavement causing her fall was neither "trivial" nor "open and obvious." (*See* Doc. No. 16 at 7, 15). Because I conclude that the "open and obvious" doctrine bars KIN, Inc's liability for Williams's negligence claim in this case, I do not address KIN, Inc.'s alternative argument.

A private landowner's duty of care includes "the duty to warn its invitees of latent or hidden dangers." *Armstrong*, 788 N.E.2d at 1089 (citations omitted). But "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." *Id.* (citation omitted). This is because "the open and obvious nature of the hazard itself serves as a warning," so

5

"the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992). As a result, whether a condition is "open and obvious" depends on "the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong*, 788 N.E.2d at 1091.

"A danger is open and obvious when it is 'not hidden, concealed from view, or undiscoverable upon ordinary inspection.'" *Hammond v. Lotz*, 198 N.E.3d 575, 578 (Ohio Ct. App. 2022) (quoting *Thompson v. Ohio State Univ. Physicians, Inc.*, 2011-Ohio-2270, 2011 WL 1842245, at *3 (Ohio Ct. App. May 12, 2011)) (further citations omitted). "'When deciding whether a condition is open and obvious, the determinative question is whether the condition is discoverable or discernible by one who is acting with ordinary care under the circumstances.'" *Shaw v. Washington Court House City Schs. Bd. of Educ.*, 2022-Ohio-4226, 2022 WL 17244849, at *5 (Ohio Ct. App. Nov. 28, 2022) (quoting *Kemme v. Seltzer Holdings, L.L.C*, 2020-Ohio-3142, 2020 WL 2840259, at *2 (Ohio Ct. App. 2020)) (internal quotation marks and additional citation omitted). "Courts have found that defects in parking-lot surfaces are open and obvious hazards where the defect was not hidden and where, had the plaintiff looked, the defect would have been observable." *Butler v. TriHealth, Inc.*, 203 N.E.3d 751, 756 (Ohio Ct. App. 2022) (citations omitted).

I conclude the divot or depression that caused Williams to trip is open and obvious as a matter of law. "Photographs of the scene" relied on by both parties "show that the area is not hidden or undiscoverable." *Hammond*, 198 N.E.3d at 580. Instead, the concentration of large and small cracks in the pavement within the crosswalk was "readily apparent" to an objective observer. *Gehm v. Tri-County, Inc.*, 2010-Ohio-1080, 2010 WL 1016091, at *4 (Ohio Ct. App. March 22, 2010); *see also Backus v. Giant Eagle, Inc.*, 684 N.E.2d 1273, 1275 (Ohio Ct. App. 1996) (cracks in the pavement one and a half inches deep and up to three and a half inches wide "should have been so

6

obvious and apparent to the appellant that he should have reasonably been expected to discover the defect"). This "should have put [Williams] on notice that the ground was not well cared for" in that portion of the crosswalk. *Gehm*, 2010 WL 1016091, at *4 (finding the "divot" that caused the plaintiff's fall was open and obvious despite her contention that the "divot was camouflaged by grass").

While Williams suggests the divot was "not easily seen, and Mrs. Williams['s] testimony was that the hazard was not noticeable," this does not create a genuine dispute of fact. (Doc. No. 16 at 9). "'[A] person does not have to actually see the dangerous condition prior to the fall in order for the condition to be open and obvious, and courts have found no duty to warn existed where the condition could have been seen had a person looked.'" *Butler*, 203 N.E.3d at 756 (quoting *Esterman v. Speedway LLC*, 2015-Ohio-659, 2015 WL 929413, at *2 (Ohio Ct. App. Feb. 25, 2015)) (additional citation omitted). Williams testified the divot was not physically concealed or obscured. (*See* Doc. No. 15-1 at 3).

Instead, Williams points to the photograph of the divot filled with water and argues that this shows the divot was not readily observable at the time she tripped on it, when it was not raining. (Doc. No. 16 at 9). But Ohio law contemplates that a reasonable customer will undertake an "ordinary inspection" of the area. *Shaw*, 2022 WL 17244849, at *6. Even if a hole or divot is "'difficult . . . to see" because it is "the same basic color as the surrounding asphalt," it is still open and obvious if it is "not concealed in any way." *Id.* (citing *Shipman v. Papa John's*, 2014-Ohio-5092, 2014 WL 617969, at *5 (Ohio Ct. App. Nov. 17, 2014). Because an ordinary inspection of the cracked and warped pavement in the crosswalk would have revealed the divot, it is "open and obvious" under Ohio law. *See Autrey v. Apollo Corp., Inc.*, 133 N.E.3d 1063, 1067 (Ohio Ct. App. 2019) (raised curb was "an open and obvious danger that was discoverable upon ordinary inspection"). *See also Snyder v. Walmart, Inc.*, Case No. 21-3989, 2022 WL 17330174, at *3 (6th Cir.

7

Nov. 29, 2022) ("courts applying Ohio law have consistently held that dangerous conditions in parking lots—like darkness, cracks in pavement, cables, and more—are open and obvious conditions, as long as the conditions are not concealed").

Before turning to Williams's next argument, I pause to address an evidentiary dispute between the parties. In its motion for summary judgment, KIN, Inc. has embedded a photograph that it characterizes as a still image lifted from several hours of security camera footage of the parking lot outside the Perrysburg Kohl's on the evening of July 19, 2021. (*See* Doc. No. 15 at 8; Doc. No. 17 at 3). KIN, Inc. asserts the image "confirms that it was not yet dark and there was no vehicular traffic present in Williams' vicinity." (Doc. No. 15 at 8).

Williams asserts I must disregard the image under Federal Rule of Evidence 56(c)(2) because it "had not been authenticated" and thus "cannot be presented in a form that would be admissible in Evidence." (Doc. No. 16 at 5). But even assuming the photo in question has not currently been authenticated, the Rule 56(c) objection "'is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *B&S Transport, Inc. v. Bridgestone Americas Tire Operations, LLC*, 171 F. Supp. 3d 669, 678-79 (N.D. Ohio 2016) (quoting *Foreword Magazine, Inc. v. OverDrive, Inc.*, Case No. 1:10–cv–1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011)). Williams does not suggest the video still in question "cannot be" authenticated. Fed. R. Civ. P. 56(c)(2). So, I may consider it.

Instead, Williams "disputes that [the image] is an accurate representation of visibility or that it is 'sunny out[,]' as alleged by Defendant." (Doc. No. 16 at 5). I agree that considering the image does not change the inferences I must draw at the summary judgment stage. *Cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (viewing the facts "in the light depicted by the videotape" because it "utterly discredited" the plaintiff's version of events). While the image appears to show it is not fully dark outside, it does not "utterly discredit[]" Williams's testimony. *Id.* Williams stated it was "dusk . . .

8

not dark dark" but not "bright out either," and she further testified that a car driving nearby had its lights on. (Doc. No. 15-1 at 4). Moreover, Williams stated in an affidavit attached to her brief in opposition that "the video recording appears brighter than the lighting conditions were in person." (Doc. No. 16-1 at 1). It is reasonable to credit these statements at this stage, particularly because the video footage itself is unavailable for review at this time.[1] Thus, for purposes of summary judgment, I infer that Williams used the crosswalk in a reduced-light environment, consistent with the time of day and season.

Even so, this inference does not create a genuine dispute of fact. As Ohio courts have repeatedly held, "darkness itself is considered an open and obvious warning of danger" that "require[s]" a customer "to have exercised increased care" when navigating a parking lot. *Butler*, 203 N.E.3d at 757 (collecting cases). Therefore, the divot that caused Williams' fall was still "open and obvious" notwithstanding the dim light environment in which she encountered it.

Shifting focus, Williams argues that Ohio's "doctrine of attendant circumstances" preserves her negligence claim. (Doc. No. 16 at 12). "Attendant circumstances are '[a]n exception to the open and obvious doctrine.'" *Coldren v. Northview Shopping Plaza, LLC*, 214 N.E.3d 1243, 1252 (Ohio Ct. App. 2023) (quoting *Simms v. Penn Nat'l Gaming, Inc.*, 2022-Ohio-388, 2022 WL 406109, at *6 (Ohio Ct. App. Feb. 10, 2022)) (alteration by *Coldren*). An attendant circumstance is a fact "'so abnormal that it unreasonably increase[s] the normal risk of a harmful result or reduce[s] the degree of care an ordinary person would exercise.'" *Coldren*, 214 N.E.3d at 1252. (quoting *Shipman*, 2014 WL 617969, at *5) (additional citation omitted). It must "contribute[] to the fall and [be] beyond the control of the injured party." *Coldren*, 214 N.E.3d at 1253 (quoting *Williams v. Lowe's of Bellefontaine*, 2007-Ohio-

---

[1] Neither party provided the video footage as an exhibit to their summary judgment briefing, and it is not otherwise in the record.

9

2045, 2007 WL 1241356, at *5 (Ohio Ct. App. April 30, 2007) (internal quotation marks and additional citation omitted).

Williams argues that her choice to "look[] for oncoming traffic" is an attendant circumstance that "negates the open and obvious doctrine." (Doc. No. 16 at 14). She testified she was "watching for any oncoming traffic coming through" while walking through the crosswalk. (Doc. No. 14-1 at 8). But "attendant circumstances do not include the individual's activity at the time of the fall unless the individual's attention was diverted by an unusual circumstance of the property owner's own making." *Butler*, 203 N.E.3d at 757 (citation and internal quotation marks omitted). Williams testified she was not "distracted" by anything at the time of her fall, and she did not observe any cars when she entered the crosswalk. (Doc. No. 14 at 4, 8). So, Williams has not identified any circumstance, outside of her own behavior, that diverted her attention—much less a circumstance of KIN, Inc.'s creation. (*See* Doc. No. 16 at 12-14).

Nevertheless, Williams analogizes her case to *Gibson v. Leber*, 19 N.E.3d 997 (Ohio Ct. App. 2014), and she argues that, like in *Gibson*, "Plaintiff's action itself could be the attendant circumstance that negates the open and obvious doctrine." (Doc. No. 16 at 14). In *Gibson*, the plaintiff went to a store to buy lottery tickets and parked in an unfamiliar area of the parking lot. 19 N.E.3d at 999. Unbeknownst to her, there was a pothole "about one to two inches deep" right next to her car on the driver's side. *Id.* When she exited her car, the open car door obstructed her view of the pothole, so as she moved to close the door, she stepped into the pothole and fell, injuring her wrist. *Id.* The Ohio Court of Appeals held that although the pothole itself may have been "open and obvious" to an objective observer, the "attendant circumstances" of the car door obstructing the plaintiff's view created a genuine dispute of fact that warranted denying summary judgment to the defendant. *Id.* at 1001.

10

I am not persuaded that *Gibson* governs this case. Even if a plaintiff's individual activity can create attendant circumstances in some instances, the plaintiff's conduct in *Gibson* is not materially similar to Williams's conduct here. Critically, in *Gibson*, the plaintiff's act of opening the door *itself obscured* the pothole into which she ultimately stepped. *See* 19 N.E.2d at 999. Moreover, a property owner could reasonably foresee that an act like opening a car door might obscure an otherwise open and obvious condition. *See id.* at 1003-04. This tracks Ohio courts' emphasis on whether the dangerous condition was physically concealed from view at the time of a plaintiff's fall. *See, e.g., Butler*, 203 N.E.3d at 758 ("the depression in the pavement . . . was not hidden or concealed from view"). *Gibson* itself signaled this understanding of the "attendant circumstances" doctrine. *See* 99 N.E.3d at 1003 (explaining that in another case, "an attendant circumstance (the pizza box) obstructed the invitee's view of the hazard"). By contrast, Williams's decision to momentarily check for oncoming traffic did not physically obscure or conceal the divot into which she ultimately stepped. (*See* Doc. No. 15-1 at 3; Doc. No. 14-1 at 8).

For these reasons, I conclude *Gibson* does not control, and Williams's decision to check for oncoming traffic does not create a genuine dispute over whether the divot that caused her to fall was "open and obvious." Accordingly, KIN, Inc. is entitled to summary judgment on Williams's negligence claim.

I also conclude KIN, Inc., is entitled to judgment in its favor on Williams's nuisance claim. Ohio law recognizes two types of nuisance claims. The first is a public nuisance. "A public nuisance is 'an unreasonable interference with a right common to the general public.'" *Kramer v. Angel's Path, L.L.C.,* 882 N.E.2d 46, 52 (Ohio Ct. App. 2007) (quoting *Brown v. Scioto Cnty. Bd. of Comm'rs*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993)). "A private individual generally does not have standing to bring a public nuisance claim." *Veller v. K.B.*, --- N.E.3d ---, 2025 WL 658010, at *11 (Ohio Ct. App. 2025) (citing *Becker v. Cardinal Health, Inc.*, 179 N.E.3d 769 (Ohio Ct. App. 2021).

11

To recover for a public nuisance, a plaintiff must suffer "a particular harm" "of a different kind that that suffered by the public in general." *Kramer*, 882 N.E.2d at 52; *see also Veller*, 2025 WL 658010, at *11 (plaintiff bringing a public nuisance claim must have suffered "different in *type*—not just different in *degree*—from the harm suffered by the general public exercising the same right.") (citations omitted) (emphasis in *Veller*).

The second type of nuisance – a private nuisance – "covers the invasion of the private interest in the use and enjoyment of land. As such, [a] plaintiff's action must always be founded upon her interest in the land." *Brown*, 622 N.E.2d at 1158.

Williams cannot sustain a claim for either a public nuisance or a private nuisance. There is no evidence in the record to support standing for a public nuisance claim or an interest in KIN, Inc.'s property sufficient to support a private nuisance claim. Moreover, Williams bases her nuisance claim on the allegations that KIN, Inc. "breached their duty to Mrs. Williams by failing to exercise ordinary care for Mrs. William's safety, fail[ing] to keep the premises in a reasonably safe condition and fail[ing] to use ordinary care to provide notice of concealed dangers," and that KIN, Inc.'s "negligence" in this regard was a "direct and proximate cause" of Williams's injuries. (Doc. No. 1 at 6). Williams's nuisance claim is thus premised on KIN, Inc.'s negligence in failing to maintain the area of the crosswalk in which she fell. Because KIN, Inc. is entitled to summary judgment on Williams's negligence claim, her derivative nuisance claim likewise fails. So, I conclude KIN, Inc., is also entitled to summary judgment on Williams's nuisance claim.

## V. CONCLUSION

For the reasons stated above, I grant KIN, Inc.'s motion for summary judgment.  (Doc. No. 15).

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge